```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF VIRGINIA

                           Alexandria Division

ROE 1, et al.                        )
                                     )
        Plaintiffs,                  )
                                     )           1:07cv1009 (JCC)
        v.                           )
                                     )
PRINCE WILLIAM COUNTY, et al.        )
                                     )
        Defendants.                  )
```

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants Prince William County, et al.'s Motion to Dismiss and Plaintiffs Roe 1, et al.'s Motion to Proceed by Fictitious Names. For the following reasons, Defendants' Motion is granted and Plaintiff's Motion is denied as moot.

### I. Background

On July 10, 2007, the Prince William County Board of County Supervisors (the "Board") passed Resolution Number 07-609 (the "Resolution"), which contained a set of directives to Prince William County (the "County") Officials. In relevant part, the Resolution directs Police Officers to inquire into an individual's immigration status when that person is otherwise lawfully detained for a violation of federal or state law, there is probable cause to believe the person is in violation of federal immigration law, and the inquiry will not extend the

1

duration of the detainment; to verify with Immigration and Customs Enforcement ("ICE") the person's immigration status if the person indicates he or she is not in the country lawfully; and to cooperate with ICE in situations of verified immigration violations. The Resolution directs the Police Department to establish standards and protocols for determining probable cause and ascertaining a person's immigration status, as well as for further cooperation with ICE. The Resolution mandates that there be no restriction on the ability of County employees and agents to send, receive, maintain, or exchange "lawfully obtained information regarding the immigration status, lawful or unlawful, of any individual." Compl. Ex. A at 2. Finally, it directs the County Executive, Defendant Craig Gerhart (the "County Executive"), to provide a report to the Board regarding the legal authority of the County to restrict services based on immigration status. The minutes of the July 10, 2007 meeting were adopted on August 7, 2007, effectively giving the Resolution full force of law.

On September 18, 2007, the Board was presented with draft General Orders 45.01 and 45.02 (the "Orders") giving the recommendations of the Police Department regarding the implementation of the Resolution. These Orders provide general guidelines and member responsibilities for police officers' implementation of the Resolution, but are considered to be draft

orders and do not include an "effective date."

On October 2, 2007, the County Executive presented a recommendation to the Board regarding what services could lawfully be restricted based on immigration status. This recommendation was accepted by the Board's passage of Resolution No. 07-828. On October 16, 2007, after the filing of this Complaint, another Resolution, No. 07-894, was passed directing County staff to develop processes to restrict those services (collectively, the "Other Resolutions"). There is no indication in the Record that the minutes of either meeting have been adopted or that the Other Resolutions in any way have obtained the full force of law.

On October 10, 2007, multiple adults and children with varying types of immigration status, along with the Woodbridge Workers Committee ("WWC"), an organization of immigrants and community volunteers providing counseling, education, outreach, and referral services to immigrant workers, (collectively "Plaintiffs") filed suit against the County along with its Board, the County Executive and the Chief of Police, in their individual and official capacities. Plaintiffs allege that the Resolutions and Orders have caused them economic loss, fear of unlawful detention, fear of denial of services, fear of separation from their families, and interference with the right to participate with their children's education and upbringing. Plaintiffs claim

that the Resolutions and Orders violate the Supremacy Clause of the United States Constitution by impermissibly regulating immigration, violate the Equal Protection Clause of the Fourteenth Amendment by permitting the use of race, color, and ethnicity for determining a persons immigration status, and that the Defendants have exceeded the authority vested in them under the laws of Virginia.

On October 30, 2007, Defendants filed a Motion to Dismiss.  On November 8, Plaintiffs filed a Motion to Proceed by Fictitious Names.  These Motions are currently before the Court.

## II. Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1). Defendants may attack subject matter jurisdiction in one of two ways.  First, defendants may contend that the complaint fails to allege facts upon which subject matter jurisdiction may be based. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.*, 211 F. Supp. 2d 779, 780 (E.D. Va. 2002).  In such instances, all facts alleged in the complaint are presumed to be true.  *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995).  Alternatively, defendants may argue that the jurisdictional facts alleged in the complaint are untrue.  *Adams*, 697 F.2d at 1219; *King*, 211 F. Supp. 2d at 780.  In that situation, "the Court may 'look beyond

4

the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Virginia v. United States*, 926 F. Supp. at 540 (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)); *see also Adams*, 697 F.2d at 1219; *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994). In either case, the burden of proving subject matter jurisdiction falls on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams*, 697 F.2d at 1219.

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing

5

that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  Nevertheless, while Rule 8 does not require  "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

### III. Analysis

#### A) Motion to Dismiss

The preliminary issue before the Court is whether Plaintiffs have standing to bring the claims laid forth in the Complaint.  In order to establish constitutional standing, a plaintiff must establish three requirements: 1) that he or she "suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical,'" 2) that there is "a causal connection between the injury and the conduct complained of," and 3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (U.S. 1992)(citations omitted).

Plaintiffs claim injuries in fact of "1) economic loss, 2) fear of unlawful detention and/or denial of services and 3) fear of separation of their families and interference with their ability to participate in the care and education of their

children." Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 11. The Court will consider each of these alleged injuries in turn to determine whether they are "injuries in fact" sufficient to establish the first requirement for standing.

### 1) Fear of Unlawful Detention

Defendants argue that Plaintiffs' allegations of potential future injury of detention and discriminatory questioning are contingent and hypothetical and thus are insufficient to provide standing. Because this is a pre-enforcement challenge, "to satisfy Article III's requirement of 'injury,' the plaintiff must allege 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute,' and that 'there exists a credible threat of prosecution thereunder.'" *Richmond Med. Ctr. for Women v. Gilmore*, 55 F. Supp. 2d 441, 461 (E.D. Va. 1999)(quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). In order to be considered credible, the "threat must be both real and immediate, not merely conjectural or hypothetical." *Id.*

Plaintiffs are not barred from bringing suit merely because the threatened injury has not yet occurred. "If the injury is certainly impending, that is enough" to provide standing. *Id.* (citing *Babbitt*, 442 U.S. at 298). Plaintiffs

argue that their situation is analogous to that of the plaintiffs in *Richmond Medical Center* who had standing for pre-enforcement review. The *Richmond Medical Center* Court found standing because the plaintiffs were challenging "a criminal law aimed specifically at one group of citizens, the enforcement of which has not been disavowed by the state," and which created an impending injury "in the form of a fear of prosecution and/or a constitutionally-suspect chilling effect." *Id.* Plaintiffs argue that the Resolution at issue in this litigation targets those who appear to be illegal immigrants, and the General Orders put them at risk of illegal questioning, detention, and deportation, as well as denial of County services.

    The situation of plaintiffs in *Richmond Medical Center* and other cases where pre-emptive challengers have had standing differ from that of this case. In cases where persons challenging a statute have been found to have standing, the challenged statutes would have authorized the prosecution that the plaintiffs feared. *Id.* In this case, the Resolution and Orders do not authorize detention on an independent basis, nor do they authorize discrimination based on race, color, national origin, or ethnicity. In short, the prosecution Plaintiffs fear is not authorized by the Resolutions or Orders in question. Instead, Plaintiffs fear that officers will be discriminatory in enforcing the Orders or that, if detained for violating State or

County laws, they will suffer from detention that goes beyond the bounds of that authorized by the Resolution and Orders.

Defendants analogize between Plaintiffs' fear in this case and the allegations that the Supreme Court found could not support standing in *Los Angeles v. Lyons*. 461 U.S. 95, 105 (1983). In that case, "Lyons' standing to seek the injunction requested depended on whether he was likely to suffer future injury" caused by police officers, though the Complaint "did not indicate why Lyons might be realistically threatened by police officers who acted within the strictures of the City's policy." *Id.* at 105-06. In order for the feared conduct to occur, Lyons would first have to be stopped by the police, and then "also be subjected to a chokehold without any provocation." *Id.* at 107. The Supreme Court "[could] not agree that the 'odds'" of that combination of circumstances occurring were "sufficient to make out a federal case for equitable relief," and therefore found that Lyons lacked standing to bring a suit. *Id.* The possibility that Plaintiffs in this matter would first be stopped and then be unlawfully questioned about their immigration status or illegally detained is similarly remote and conjectural.

If discriminatory enforcement occurs, or if detentions are extended unlawfully, the parties who suffer those injuries will then have standing. However, before any illegal discrimination or unlawful detention occurs, the question for the

9

Court is "whether any perceived threat to respondents is sufficiently real and immediate to show an existing controversy." *O'Shea*, 414 U.S. at 496-497. Such controversy does not exist "simply because [Plaintiffs] anticipate violating lawful criminal statutes and being [detained] for their offenses, in which event they may . . . be affected by the allegedly illegal conduct charged." *Id.* The Supreme Court has clearly held that "attempting to anticipate whether and when these [Plaintiffs] will be charged with crime" and suffer the discriminatory practices they fear "takes us into the area of speculation and conjecture" and is not sufficient to provide standing. *Id.* The threat to these Plaintiffs, like the claimants in *O'Shea* and *Lyons*, is too speculative to rise to the level of injury in fact and thus cannot support standing.

The Court will address the question of whether fear of the speculative event coming to pass is in itself an injury in the section below.

> 2) <u>Fear of Separation from Families and Interference with Ability to Care for Children</u>

The possibility of separation by deportation or unlawful detention is, as discussed above, unduly speculative. Plaintiffs argue that the fear caused by contemplation of the possibility of those speculative events coming to pass is, in itself, an injury, despite the speculative nature of the events

10

feared.  As mentioned above, parties challenging an ordinance as unconstitutional must show that they fear prosecution under that statute.

Under the County's Resolution and Orders, in order for a family to be separated, either by deportation or extended detention, the person being deported or detained must first have committed a violation of state or county law and then be unlawfully detained or be found to be in the country unlawfully and scheduled for deportation.  The Resolution and Orders only direct the actions of police officers in questioning immigrants about their status, and then only when the immigrants are detained on another matter and the officers have probable cause to question their status.  In addition, the feared actions are made even more hypothetical because the Orders are drafts and have not been adopted by the Police Department.  Although the Resolutions make reference to restricting the provision of county services to immigrants, none of the Resolutions nor the Orders yet direct County employees to question patrons of public facilities.

Neither the Resolution nor the Orders direct the actions of private citizens or criminalize behavior that was not already punishable by local, state, or federal ordinance, and thus fear of such punishment does not create a cognizable injury. Fear of being subject to possible future unlawful detention,

11

discriminatory questioning, or unconstitutional denial of services, since those actions are not contemplated by the Resolution or Orders nor supported by any adopted Police Department policy, cannot provide standing.

   3) Denial of services

In order to show injury from denial of services, Plaintiffs must demonstrate that they are otherwise entitled to the services and that their denial is unlawful or unconstitutional.  None of the Plaintiffs in this action make such claim.

The Board has not begun to restrict county services to immigrants.  Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss describes Board meetings and Resolutions that occurred after the filing of the complaint, including the adoption of a report outlining the services that can be restricted and denied based on the recipient's immigration status and a directive to County staff to develop processes to implement the restrictions.  *Id*. at 4-5.  There is no indication that the minutes from the meetings have been adopted, and thus no indication that Resolutions No. 07-828 and 07-894 have force of law.  Even if the Resolutions have been given force of law, Resolution 07-894 merely "directs staff to develop processes to restrict services identified" by the County Executive's report.  The Resolutions and Orders at issue in this litigation do not

actually unlawfully refuse to provide any services, and none of the Plaintiffs have alleged that they have been unlawfully denied services to which they were entitled.  As discussed above, mere fear that an injury may occur if certain circumstances come to pass is not sufficient to provide the requisite injury for standing purposes.

If and when Plaintiffs are unlawfully or unconstitutionally deprived of services to which they are otherwise entitled, they will have standing to sue for that denial.  The possibility of those future harms are, as yet, too speculative to provide standing.

4) Economic Loss

Economic loss, whether actual or anticipated, is an injury in fact and can provide standing when there is a causal connection between the conduct complained of and that loss.  *See, e.g., Bernard v. School Bd.,* 58 F. Supp. 2d 669, 673 (E.D. Va. 1999).  Several Plaintiffs claim they have suffered economic loss in the form of lost rental income and lost business, which they attribute to the flight of immigrants from the County due to the Resolution, Orders, and anti-immigrant sentiment.

Plaintiffs cite *Lozano v. City of Hazleton,* 496 F. Supp. 2d 477, 488-489 (M.D. Pa. 2007), as an example of a court finding that lost rental income was a sufficient economic loss to give standing to a plaintiff challenging a regulation as

unconstitutional. Pls.' Mem. in Opp'n. at 11. The plaintiff in *Lozano* lost tenants after a local ordinance was passed regulating the leasing of property to immigrants. *Lozano,* 496 F. Supp. 2d at 485, 489. The Court found that the plaintiff had standing because his loss was directly ascribable to the ordinance in question, since "[h]is tenants left after he informed them that they may have to obtain a permit from the City to rent the apartment" pursuant to the new ordinance. *Id.* at 488-89. In this case, Plaintiffs allege that tenants and clients are leaving the County because of the acts of the Board and thus that they are no longer present to provide economic benefit to Plaintiffs. Unlike the ordinance in *Lozano*, the Resolutions and Orders have no effect on the leasing of property, nor do they have any immediate impact on business regulation.[1] Although immigrants who are potential tenants or clients may cite the Resolution for their moves, the economic loss suffered by Plaintiffs is not traceable to the language of the Resolution or Orders and thus does not provide the causal connection required for standing.

Plaintiff WWC claims economic loss because of its need "to devote significant resources to deal with the Resolution."

---

[1] Resolution 07-984 "directs staff to implement processes . . . to prevent business licenses from being issued to persons who cannot demonstrate legal presence." Pls.' Mem. in Opp'n Ex. 4. However, as mentioned above, there is no indication that this Order has the status of law. Additionally, Plaintiffs claim of economic injury is ascribed not to business licenses being denied, but to the fact that "a large number of residents are moving out of [the County]," resulting in a decrease in the number of clients. Pl.'s Mem. in Opp'n at 11; Compl ¶¶ 43-44, 50, 52.

Pls.' Mem. in Opp'n at 12, Compl. ¶¶ 85-86.  A plaintiff can obtain associational standing if "(1) its own members would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim nor the relief sought requires the participation of individual members in the lawsuit." *N.C. Motorcoach Ass'n v. Guilford County Bd. of Educ.*, 315 F. Supp. 2d 784, 796 (M.D.N.C. 2004) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 341-45 (1977). Both the "first and second prongs are constitutional requirements, but [the] third prong is a prudential requirement."  *Id.* (citing *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 554-58 (1996)).  Plaintiffs have shown no evidence that WWC's members have any injuries other than the fact that they are situated similarly to the individually named Plaintiffs, discussed above, who do not have standing to sue in their own right.  Therefore, WWC has not sufficiently alleged associational standing.

　　　　Plaintiffs argue that WWC has organizational standing in addition to associational standing, citing a case from the Ninth Circuit which uses the "organizational" rather than "associational" language in the context of a Fair Housing Act Claim.  Pls.' Mem. in Opp'n at 19 (citing *Fair Hous. v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002).  However, the Fair Housing Act creates unique implications for organizational standing separate

from the general associational standing test.  *See , e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982); *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 486 (D. Md. 2007)(describing "[o]rganizational standing under the FHA").  The Fourth Circuit has made it clear that there is no distinction between general "associational" and "organizational" standing and that there is only one test: that outlined by the Supreme Court in *Hunt* and its progeny.  *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005)("We have generally labeled an organization's standing to bring a claim on behalf of its members 'associational standing.'  However, . . . we have used the term 'organizational standing' inter-changeably with 'associational standing.'" (citing *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 517 (4th Cir. 2003); *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002); *Waterford Citizens' Ass'n v. Reilly*, 970 F.2d 1287, 1290 (4th Cir. 1992))).

     None of the injuries alleged by Plaintiffs is sufficiently concrete and imminent to provide them with standing.  Therefore, the Court need not reach the other issues raised in Defendant's Motion to Dismiss and find that it should be granted for lack of subject matter jurisdiction.

### B) Motion to Proceed by Fictitious Names

Because this Court will grant Defendants' Motion to Dismiss, Plaintiffs' Motion to Proceed by Fictitious Names is

moot and therefore will be denied.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss will be granted and Plaintiffs' Motion to Proceed by Fictitious Names will be denied as moot.

An appropriate order will issue.

December 3, 2007                            /s/
Alexandria, Virginia                James C. Cacheris
                            UNITED STATES DISTRICT COURT JUDGE